UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------X
WINSOME THELWELL,

**COMPLAINT**

Plaintiff,

-against-

Docket No.:

THE CITY OF NEW YORK, MINA MALIK,
and BRIAN CONNELL,                    **JURY TRIAL**
Defendants.                    **REQUESTED**
-------------------------------------------------------------X

Plaintiff **WINSOME THELWELL,** by her attorneys **MADUEGBUNA**

**COOPER LLP**, for her complaint herein alleges as follows:

## NATURE OF THIS ACTION

1.      This is an action for injunctive relief, declaratory relief, and money

damages to remedy retaliation for having complained of and protested

discrimination on the basis of race, color and national origin in violation of 42

U.S.C. §1981 as amended by the Civil Rights Act of 1991, 42 U.S.C. §1981(a)

("Section 1981"), the New York Human Rights Law as contained in New York State

Executive Law, §296 *et. seq.* ("State HRL") and the New York City Human Rights

Law as contained in the Administrative Code of the City of New York, §8-107 *et*

*seq.*("NYCHRL") ("City HRL").

2.      This action is being brought to vindicate the human and civil rights of

Plaintiff. Plaintiff contends that she was subjected to adverse treatments in

retaliation for her prior complaints of unlawful discrimination by filing and prosecuting a lawsuit against Defendant CITY OF NEW YORK (the "CITY") and some of its employees.

## JURISDICTION AND VENUE

3.      This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. §§1331 and 1343. This Court has supplemental jurisdiction over the state causes of action pleaded herein.

4.      Venue is proper in this district pursuant to 28 U.S.C. § 1391(b) because a substantial part of the events or omissions giving rise to this action, including the unlawful employment practices alleged herein, occurred in the Southern District of New York.

## PROCEDURAL REQUIREMENTS

5.      All conditions precedent and procedural requirements for this action have been met.

## PARTIES

6.      Plaintiff Winsome Thelwell ("THELWELL" or "Plaintiff") is a black woman of Jamaican national origin and West Indian ancestry with marked Jamaican ethnic and linguistic characteristics, behavior, and mannerisms.

7.      Plaintiff, who did not come to the United States until she was 28 years old, holds an undergraduate degree in Psychology and Legal Studies from the City

University of New York and a Master's degree in Public Administration from the Robert F. Wagner School of Public Services of New York University.

8.      Since 1990, Plaintiff has been a resident of the Borough of Brooklyn, State of New York.

9.      Defendant CITY is a municipal corporation existing under and by virtue of the laws of the State of New York.

10.     The Civilian Complaint Review Board ("CCRB") is an agency or department of Defendant CITY.

11.     CCRB exists under and by virtue of the laws of the City and State of New York.

12.     Defendant MINA MALIK ("MALIK") is a former employee of Defendant CITY.

13.     Defendant MALIK was the Executive Director of the CCRB between February 2015 and November 2016.

14.     During her tenure as Executive Director of CCRB, MALIK was responsible for developing, implementing, and enforcing personnel policies and procedures affecting the terms and conditions of employment of employees of CCRB, including the Plaintiff.

15.     Defendant MALIK is sued in her individual and official capacities.

16.     Defendant Brian Connell ("CONNELL") is an employee of the CITY.

CONNELL is and was, at all relevant times, the Deputy Executive Director of Administration at CCRB.

17.    Upon information and belief, in his capacity as Deputy Executive Director of Administration, CONNELL assisted in developing, implementing, and enforcing personnel policies and procedures affecting the terms and conditions of employment of employees of CCRB, including the Plaintiff.

18.    CONNELL is sued in his individual and official capacities.

19.    At all relevant times, Defendants were responsible for, and made, personnel decisions at CCRB, including the decisions to promote or not promote Plaintiff to a higher title and to increase or decrease Plaintiff's salary.

20.    As such, during the relevant time, each Defendant had policymaking authority and was charged with ensuring that CCRB employees were not subjected to discrimination on the basis of race, color, ancestry, and/or national origin or retaliation for engaging in protected activity.

21.    At all relevant times, Defendants were acting under color of the statutes, ordinances, regulations, customs, and usages of the United States, and the State of New York, and under the authority of their respective positions or offices.

## FACTUAL ALLEGATIONS

*The Plaintiff's Prior Lawsuit*

22.    On February 25, 2013, Plaintiff filed a lawsuit against the CITY and

Laura Edidin in the United States District Court, for the Southern District of New York, <u>Winsome Thelwell v. City of New York, et al.</u>, *Docket No. 13 CIV 1260*, claiming disparate treatment, retaliation, and a hostile work environment under 42 U.S.C. § 1981, the State HRL, and the City HRL. (the "First Action").

23.     The First Action alleged that Plaintiff did not receive promotions to the positions of Director of Investigative Policy in March 2012 and Deputy Executive Director for Investigations in August 2012 (the "2012 DEDI Position"), respectively, and that her career advancement was stymied in other ways because of her race, color, and national origin.

24.     Between April 26, 2017 and May 3, 2017, the claims remaining in the First Action were tried before a jury, which returned a verdict for the Defendant. Plaintiff has since appealed this adverse result.[1]

25.     The basis for this suit, on the other hand, is denials to Plaintiff of promotions to the position of Deputy Executive Director for Investigation or Chief of Investigations in May 2015 and October 2016, in favor of lesser qualified candidates chosen from outside of CCRB, in retaliation for the filing of the First Action, and for other adverse employment actions taken against her in retaliation for her prosecution of the First Action.

26.     While Plaintiff recognizes that she is barred from re-litigating the

---

[1] <u>Winsome Thelwell v. City of  New York et al.</u>, Docket No: 17-1767, (2d. Cir., filed June 5, 2017)

promotions and other acts at issue in the First Action under principles of *res judicata*, Plaintiff submits that she is allowed to use the factual allegations of the First Action as background evidence for the present action.

27.     At all relevant times, Defendants MALIK and CONNELL were aware of the First Action, including at the time of the conduct complained of herein.

*Plaintiff Again Applies to be Deputy Executive Director for Investigations*

28.     In January 2015, a vacancy notice was posted to hire two individuals for the position of Director of Investigative Procedures ("DIP") at CCRB.

29.     In January 2015, Plaintiff, who then held the title of Investigation Manager – Team 5, applied for one of two open DIP positions.

30.     In February 2015, defendant MALIK became the Executive Director of CCRB.

31.     In February 2015, shortly after Defendant MALIK became Executive Director, Denis McCormick ("McCormick") resigned from his position as Deputy Executive Director for Investigations ("DEDI") at CCRB.

32.     At this time the DIP Position that Plaintiff applied for in January had not yet been filled.

33.     Following the resignation of McCormick as DEDI, a vacancy notice was posted to fill the position of DEDI or Chief of Investigations vacated by McCormick ("DEDI Position").

34.    Plaintiff applied for the now-open DEDI Position.

35.    As defendant MALIK has acknowledged, Plaintiff was amply qualified for the DEDI Position.

36.    As a result, on April 1, 2015, Plaintiff was interviewed for the DEDI Position by Defendants MALIK and CONNELL, and one other CCRB executive.

37.    The April 1, 2015 interview was scheduled as an interview for the DEDI position, and Plaintiff understood it to be an interview for that position.

38.    All of the questions at the April 1, 2015 interview pertained to the DEDI position.

39.    The DIP position was not discussed at all during the April 1, 2015 interview.

*Plaintiff is Denied Promotion to the DEDI Position in May 2015 in Retaliation for the First Action*

40.    On May 7, 2015, Plaintiff was invited to a meeting with Defendant MALIK and Richard D. Emery, who then was the Chairman of the Board of CCRB, where she was told that she would receive "good news" (the "May 7 meeting").

41.    During the May 7 meeting, Plaintiff was told by Defendant MALIK that she would not be promoted to the DEDI Position but instead would be offered the DIP Position, a subordinate position with a substantially lower salary.

42.    When Plaintiff questioned at the May 7 meeting, why she was not

being offered the DEDI Position, she was told by MALIK that she was qualified but that she wanted to hire a person from outside of the agency for the position.

43.     Defendant MALIK's refusal to promote Plaintiff to the DEDI Position and her decision to hire a person from outside of the agency for the position, was apparently motivated and influenced by the fact that Plaintiff filed the First Action.

44.     At the time that Defendant MALIK decided not to promote Plaintiff to DEDI, to MALIK's knowledge, the First Action was ongoing and was being actively prosecuted by Plaintiff.

45.     Defendant MALIK's story about why she did not promote Plaintiff to the DEDI Position soon changed.

46.     When, later on May 12, 2015, Plaintiff went to discuss privately with MALIK her decision not to promote Plaintiff to the DEDI Position, MALIK informed Plaintiff that she made the decision because she did not want to be associated with, as MALIK put it, "things that had happened" with Plaintiff before MALIK came to work at CCRB.

47.     Defendant MALIK's remark about "things that had happened" with Plaintiff before MALIK came to work at CCRB, is an obvious reference to Plaintiff's filing of the First Action.

48.     At all relevant times, including during and after the May 7 meeting, CCRB Chair, Mr. Emery, made it clear to Plaintiff that the decision as to who to

select for the DEDI Position was made solely by MALIK as Executive Director of CCRB.

49.     Mr. Emery also informed Plaintiff, at a later time, that MALIK had stated to him that she could not justify promoting someone who had filed a lawsuit against the agency to the DEDI Position, where she would be the face of the investigative arm of the agency.

50.     Defendant MALIK's decision not to promote Plaintiff to the DEDI Position in 2015 was therefore due to Plaintiff's filing and prosecution of the First Action.

*Defendants Further Retaliate Against the Plaintiff in Diverse Ways including Putting her Continued Employment in Jeopardy and Offering her a Lower Salary*

51.     As of May 12, 2015, Plaintiff had accepted the offer for the DIP Position made to her at the May 7, 2015 meeting.

52.     Very shortly after Plaintiff's acceptance of the DIP Position in May 2012, the title was changed to, and remained, Deputy Chief of Investigations, and the DEDI Position was renamed Chief of Investigations.

53.     Following Plaintiff's acceptance of the DIP Position, in order to further retaliate against her for the First Action, Defendants took a number of adverse actions against Plaintiff.

54.     In that regard, Defendants failed to: (i) adequately compensate Plaintiff for the DIP Position; (ii) delayed the processing of her transfer to the DIP

Position; (iii) placed Plaintiff in a Civil Service title that put Plaintiff at risk of her losing the DIP Position in the future; and (iv) saddled Plaintiff with duties and responsibilities and work that are outside the scope of her position and title, without any increase in her salary and benefits.

55.     As to Plaintiff's salary, in retaliation for her filing the First Action, Defendants MALIK and CONNELL, without any input from Plaintiff, gave Plaintiff a starting salary for the DIP Position that was inadequate for the position, given the duties and responsibilities of the position.

56.     Initially, during the May 7, 2015 meeting at which Plaintiff was offered the DIP Position, compensation was not discussed.

57.     Later, on or about May 14, 2015, Defendants CONNELL and MALIK contacted Plaintiff to discuss compensation for the DIP Position. However, MALIK and CONNELL refused to negotiate Plaintiff's compensation; Plaintiff was told that she was being offered the maximum salary available for the position but that her job performance and salary would be evaluated after six months.

58.     As Plaintiff later realized, the salary offered her by Defendants MALIK and CONNELL for the DIP Position, was not the maximum salary available for the position.

59.     Moreover, despite Defendants MALIK and CONNELL promise to review Plaintiff's performance and compensation after six months, no such

evaluation or salary review ever occurred.

60.    During the summer months of 2015, Plaintiff was subjected to additional negative actions by Defendants MALIK and CONNELL with respect to her pay and job status in retaliation for the First Action.

61.    First, although Plaintiff took on the duties and job responsibilities of the DIP Position starting May 12, 2015, due to the actions of Defendants MALIK and CONNELL, a delay in processing prevented Plaintiff from being paid her new, higher salary until July 6, 2015.

62.    As a consequence, Plaintiff performed the responsibilities of her new position as DIP for nearly eight weeks while being paid only the salary of her previous job as Team Investigative Manager.

63.    To make matters worse, during the nearly eight weeks, from May 12, 2015 to July 6, 2015, Plaintiff was DIP, but not being correctly compensated for the position, Plaintiff also continued to handle the duties and responsibilities of her last position as Team Manager.

64.    Second, when Plaintiff was offered the DIP Position, noting the potential consequences, Plaintiff, in an email of May 18, 2015, to both Defendants CONNELL and MALIK, requested that she not be processed in the Civil Service title of "Administrative Staff Analyst", the DIP Position was posted under, since accepting a position for which a test is offered while not having taken the test,

would put Plaintiff in an untenable position.

65.    To the knowledge of Defendants, the Civil Service title of "Administrative Staff Analyst", Defendants posted the DIP Position under was one that required the position to be filled from a competitive civil service list. As a result, Plaintiff could be "bumped" from the position if a city employee certified to the list asked for the job.

66.    In response to Plaintiff's concern, CONNELL assured Plaintiff that he intended to modify the title selected for the position; and that the title modification would take place when Plaintiff was finally processed for the DIP Position.

67.    Contrary to Defendant CONNELL's promise, the modification of the Civil Service title for the DIP Position did not take place when Plaintiff was finally processed for the position in August 2015.

68.    Upon Plaintiff's further complaint in August 2015, Plaintiff was again assured by CCRB Human Resources staff that she would not be processed into the Administrative Staff Analyst title.

69.    However, in spite of her repeated protests and the repeated assurances from Defendants and CCRB staff members, Plaintiff was processed for the DIP Position with the "Administrative Staff Analyst" title she had previously objected to and that CONNELL had assured her she would not receive.

70.    It was not until August 17, 2015 that corrections were made and

Plaintiff's promotion to the DIP Position was finally processed with the correct Civil Service title.

71.    In sum, it took Defendants nearly fourteen weeks from May 2015 when Plaintiff assumed the duties of the DIP Position, to August 2015, to accomplish the routine administrative matter of correctly processing Plaintiff into the DIP Position.

72.    By associating the DIP Position to the Civil Service title of "Administrative Staff Analyst", that required the position to be filled in the future from a competitive Civil Service list, Defendants placed Plaintiff in the vulnerable position of losing the position in the future to a certified test taker.

73.    During the time that Plaintiff's salary and job status with respect to her promotion to the DIP Position were being adversely affected by the actions of Defendants, the First Action against the CITY was ongoing and being actively prosecuted.

74.    The failures and omissions of Defendants in connection with the amount of compensation offered Plaintiff and processing of Plaintiff into the DIP Position caused Plaintiff emotional distress and was in retaliation for Plaintiff's filing and prosecution of the First Action.

_Thelwell Helps to Train and Assist Several Deputy Executive Directors for Investigation_

75.    In July 2015, Defendant MALIK selected Thomas Kim ("Kim") over

Plaintiff for the Chief of Investigations or DEDI Position.

76.     Prior to his selection, KIM was employed by the City of Chicago.

77.     Kim had no experience working for the CCRB or any other part of the government of Defendant CITY.

78.     As a result of his lack of experience, Kim relied heavily on Plaintiff for training, advice, and assistance in his new position as DEDI at CCRB.

79.     During Kim's tenure as DEDI, the staff of the investigative division, which Kim nominally led, relied largely on Plaintiff and another CCRB employee, James C. Duerr ("Duerr"), for support and leadership.

80.     In October 2016, Thomas Kim resigned as DEDI and was replaced by MALIK with Mercer Givhan ("Givhan") as acting DEDI.

81.     During his tenure as DEDI, Thomas Kim was paid an initial annual salary of $135,000, but at the time of his resignation in October 2016, Kim's salary has risen to $160,000.

82.     Like Kim, Givhan had no experience working for the CCRB until MALIK became Executive Director and certainly no managerial experience at the investigative division level of CCRB.

83.     As a result of Givhan's inexperience, Plaintiff again found herself in the position of training the new DEDI to do a job for which she had been repeatedly rejected.

*Plaintiff is Again Denied Promotion to the DEDI Position in November 2016 in Retaliation for the First Action*

84.     By November 2016, the DEDI position was again vacant, and Plaintiff once again applied for the job.

85.     Although recommended for the again vacant position of DEDI, by Kim who was departing CCRB, Plaintiff was not promoted to the position

86.     Later in November 2016, MALIK resigned as Executive Director of the CCRB.

87.     Despite several opportunities between February 2015 and November 2016 to give Plaintiff the promotion she deserved, MALIK prevented Plaintiff from becoming DEDI for as long as she had the power to do so.

*Plaintiff is Placed to act in a Joint Capacity as DEDI, while Still Being Paid a Lower Salary*

88.     In January 2017, less than two months after MALIK left CCRB, Plaintiff finally was afforded the opportunity to step into the DEDI role in an acting capacity working jointly with Duerr, a CCRB employee Plaintiff previously supervised and mentored several years ago.

89.     As a result, between January 2017 and April 12, 2017, Plaintiff and Duerr jointly handled the duties of the DEDI Position, while still being paid the salaries of their previous, lower level positions.

*Plaintiff is Offered the DEDI Position in a Joint Capacity and a Lower Salary on the Eve of Trial of the First Action*

90.     On April 12, 2017, Plaintiff and Duerr were appointed to the DEDI position on a permanent basis.

91.     Plaintiff was offered the DEDI position only two weeks before the commencement  of the trial of the First Action was set to begin on April 26, 2017.

92.     Even after being promoted to the DEDI position Plaintiff still faced retaliatory treatment.

93.     Plaintiff's base salary in the DEDI position is $150,000, and is $10,000 lower than Kim's salary, when he resigned the DEDI Position in 2016.

94.     Because of her resistance to employment practices she believed were discriminatory, Plaintiff was denied promotion to a position for which she was amply qualified for almost two years and has additionally suffered manipulations of her job status and payment of inadequate salary.

95.     Defendants have also, from time to time, since 2015, saddled Plaintiff with responsibilities and work that are outside the scope of Plaintiff position and title, without any increase in her salary and benefits.

96.     In furtherance  of  their  discriminatory  objectives,  Defendants purposefully  circumvented  established  manuals,  guidelines,  policies,  and procedures.

97.     Defendants conspired and or aided and abetted each other in unlawful

employment practices and did so in callous disregard of Plaintiff's rights.

98.    As a proximate result of Defendants' discriminatory conduct towards Plaintiff, Plaintiff has suffered and continues to suffer significant monetary loss and damages.

99.    As a further proximate result of Defendants' actions, Plaintiff has suffered and continues to suffer from severe emotional distress, lasting embarrassment, humiliation, and anguish, as well as other incidental and consequential damages and expenses.

**AS AND FOR A FIRST COUNT**
**(Retaliation Pursuant to 42 U.S.C. § 1983 and 42 U.S.C. § 1981)**

100.    Plaintiff hereby repeats and realleges each allegation in each numbered paragraph above.

101.    In retaliation for the First Action, among other protected activity, Defendants unlawfully failed to promote Plaintiff twice to the DEDI Position in 2016 and 2016.

102.    Moreover, in further retaliation for the First Action, Defendants have: (a) failed and refused to pay her salary commensurate with her positions and responsibilities; (b) delayed in processing her into the DIP Position; (c) placed Plaintiff in a Civil Service title that put Plaintiff at risk of her losing the DIP Position; and (d) from time to time, since 2015, saddled Plaintiff with duties and responsibilities and work that are outside the scope of her position and title,

without any increase in her salary and benefits.

103.   Defendants' actions, viewed individually and/or in the aggregate, would dissuade a reasonable worker from engaging in future protected activity.

104.   By reason of the foregoing, Plaintiff has suffered loss and damage in an amount to be determined at trial but estimated to be no less than One Hundred Thousand ($100,000.00) Dollars.

## AS AND FOR A SECOND COUNT
### (Retaliation in Violation of the State HRL)

105.   Plaintiff hereby repeats and realleges each allegation in each numbered paragraph above.

106.   All the various actions taken by Defendants against Plaintiff subsequent to her complaints of discrimination including filing and prosecution of the First Action constitute unlawful retaliation in violation of New York State Human Rights Laws.

107.   By reason of the foregoing, Plaintiff has suffered loss and damage in an amount to be determined at trial but estimated to be no less than One Hundred Thousand ($100,000.00) Dollars.

## AS AND FOR A THIRD COUNT
### (Aiding and Abetting Discrimination in Violation of the State HRL)

108.   Plaintiff hereby repeats and realleges each allegation in each numbered paragraph above.

109.    All the various actions taken by Defendants against Plaintiff constitute unlawful aiding and abetting of discrimination and retaliation in violation of the New York State Human Rights Laws.

110.    By reason of the foregoing, Plaintiff has suffered loss and damage in an amount to be determined at trial but estimated to be no less than One Hundred Thousand ($100,000.00) Dollars.

## AS AND FOR A FOURTH COUNT
### (Retaliation in Violation of the City HRL)

111.    Plaintiff hereby repeats and realleges each allegation in each numbered paragraph above.

112.    All the various adverse actions taken by Defendants against Plaintiff for filing the First Action constitute unlawful retaliation in violation of New York City Human Rights Laws.

113.    By reason of the foregoing, Plaintiff has suffered loss and damage in an amount to be determined at trial but estimated to be no less than One Hundred Thousand ($100,000.00) Dollars.

## AS AND FOR AN FIFTH COUNT
### (Aiding and Abetting Discrimination in Violation of the City HRL)

114.    Plaintiff hereby repeats and realleges each allegation in each numbered paragraph above.

115.    All the various actions taken by Defendants against Plaintiff constitute

unlawful aiding and abetting of discrimination and retaliation in violation of the New York City Human Rights Laws.

116.   By reason of the foregoing, Plaintiff has suffered loss and damage in an amount to be determined at trial but estimated to be no less than One Hundred Thousand ($100,000.00) Dollars.

## **PUNITIVE DAMAGES**

117.   The conduct of the individual defendants was outrageous and malicious, was intended to injure Plaintiff, and was done with conscious disregard of Plaintiff's civil rights, entitling Plaintiff to an award of punitive damages.

118.   By reason of the wanton, unrepentant, reckless, and egregious conduct of these defendants, Plaintiff claims punitive damages.

**WHEREFORE,** Plaintiff prays that this Court grant him judgment containing the following relief:

a.      Impanel a jury to hear Plaintiff's claims;

b.      Grant plaintiff preliminary and permanent injunctions prohibiting Defendants, their agents, successors, employees, and those acting in concert with them and at their direction, from engaging in any of the practices set forth above and any other practice shown to be unlawful or retaliatory or discriminatory on the basis of race, color, national origin, or ancestry with respect to compensation, terms, conditions, and privileges of

employment, or from continuing or maintaining a policy, practice, custom, or usage of denying, abridging, withholding, conditioning, limiting, or otherwise interfering with the rights of Plaintiff to enjoy equal employment opportunities secured by law;

c.      Establish an imposed oversight and monitoring of the activities of Defendants to prevent future acts of retaliation;

d.      Establish a mechanism for the enforcement of the injunctions by requiring Defendants to present to the Court within thirty days of the issuance of the injunction a plan showing precisely and in detail how they will comply with the Court's order, and how they plan to cease and desist from policies, practices, customs, and usages of discrimination against Plaintiff and other persons similarly situated;

e.      An award of damages in an amount to be determined upon the trial of this matter to compensate Plaintiff for his monetary loss and damages, including Plaintiff's loss of past and future earnings, bonuses, compensation, and other employment benefits;

f.      An award of damages to compensate Plaintiff for mental anguish, humiliation, embarrassment, and emotional injury for each cause of action;

g.     An award of damages in an amount to be determined upon the

trial of this matter to compensate Plaintiff for violations of his rights under

Section 1981, the New York State Human Rights Law, New York City

Human Rights Law;

h.     An award of punitive damages to be determined at the time of trial

for each cause of action;

i.     An award of reasonable attorneys' fees and costs related to

Plaintiff's claims under Section 1981 and the New York City Human Rights

Law; and

j.     Such other and further relief as this Court may deem just and

proper.

Dated: New York, New York
       August 3, 2017

                              Respectfully Submitted,

                              SAMUEL O. MADUEGBUNA, ESQ.
                              **MADUEGBUNA COOPER LLP**
                              Attorneys for Plaintiff
                              WINSOME THELWELL
                              30 Wall Street, 8th Floor
                              New York, New York 10005
                              (212) 232-0155

TO:    THE CITY OF NEW YORK
       c/o Corporation Counsel
       Law Department
       100 Church Street, 2nd Floor
       New York, New York 10007

- 22 -

MINA MALIK
Harvard Law School
1563 Massachusetts Avenue
Cambridge, MA 02138

BRIAN CONNELL
The City of New York's Office of Administrative Trials and Hearings
100 Church Street, 12th Floor
New York, New York 10007

*UNITED STATES DISTRICT COURT*
*SOUTHERN DISTRICT OF NEW YORK*                    *Docket No.:*

-------------------------------------------------------------------------------------------------------------------

*WINSOME THELWELL,*

*Plaintiff,*

*-against-*

*THE CITY OF NEW YORK, MINA MALIK, and BRIAN CONNELL,*

*Defendants.*

-------------------------------------------------------------------------------------------------------------------

*COMPLAINT AND JURY DEMAND*

-------------------------------------------------------------------------------------------------------------------

*Signature (Rule 130-1.1-a)*

_____

*Print name beneath   SAMUEL O. MADUEGBUNA, ESQ.*

---

*Yours, etc.*

*MADUEGBUNA COOPER LLP*
*Attorneys for Plaintiff*
*30 Wall Street, 8th Floor*
*New York, New York 10005*
*(212) 232- 0155*

*To: All Counsel of Record*

*Service of the within is hereby admitted on*

_____

*Attorneys for*